

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**
DEC 1 - 2005
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

JAMES A. BROOKS,

    Petitioner,

v.

    CASE NO. 04-CV-74045-DT
    HONORABLE PAUL D. BORMAN

DAVID GUNDY,

    Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

**I. Introduction**

James A. Brooks ("Petitioner"), a state prisoner presently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan,[1] has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of second-degree murder, possession of a firearm during the commission of a felony, and felon in possession of a firearm following a jury trial in the Wayne County Circuit Court in 2001. He was sentenced to 20 to 50 years imprisonment on the murder conviction, a consecutive term of two years imprisonment on the felony firearm conviction, and a concurrent term of two to five years imprisonment on the felon in possession conviction.

In his pleadings, Petitioner raises claims concerning his confrontation rights, the

---

[1]At the time he instituted this action, Petitioner was confined at the Oaks Correctional Facility in East Lake, Michigan where Respondent is the warden.

1

effectiveness of trial counsel, and the sufficiency of the evidence to support his felon in possession conviction. For the reasons stated below, the Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis.*

## II.     Facts and Procedural History

Petitioner's convictions arise from the shooting death of Andre Raines outside Mapp's Lounge in Detroit, Michigan on August 2, 2002. Petitioner was charged with first-degree murder, possession of a firearm during the commission of a felony, and felon in possession of a firearm. He was tried with co-defendant Kenyate Parker, who was charged with accessory after the fact.

At trial, Brandon Bradley testified that he was at the bar drinking and dancing with Andre Raines and Dejuan White that evening. After the bar closed, they went outside and noticed Petitioner and Kenyate Parker leaning on a black Monte Carlo. White and Bradley began to argue about food that Bradley had carried from the bar. White struck Bradley. Raines tried to calm the situation, but then began arguing with White. Parker then retrieved a handgun from the Monte Carlo and fired one or two shots into the air. Bradley ran across Seven Mile Road because he was frightened. When he came back across the road, he saw Petitioner take the gun from Parker and fire five or six shots at Raines who was running across the street. Bradley claimed he was 40 to 50 feet away from Raines. Bradley said that the gun jammed as Petitioner fired it, but then became unjammed. One shot hit Raines who fell to the ground. Petitioner got into a car with Parker and White and left the scene. Bradley and some friends took Raines to the hospital. Bradley gave the police a statement after taking Raines to the hospital. He described the people involved in the shooting, but did not give the police their names. On January 8, 2001,

Bradley viewed a line-up at the police station and identified Petitioner as the shooter.

On cross-examination, Bradley admitted that he told the police that he ran behind a restaurant when he crossed the street, that he heard a shot when he exited the bar, and that he only knew Raines by the name "Dre." He acknowledged that these statements were not entirely accurate and claimed that he did not tell police the truth because he was upset. Bradley was confronted with other inconsistencies between his police statement, preliminary examination testimony, and trial testimony when questioned by Petitioner's counsel and co-defendant Parker's counsel. At one point during cross-examination, the trial court interrupted Petitioner's counsel and advised him to move on because the subject had been exhausted.

On re-cross examination, Petitioner's counsel questioned Bradley about his prior testimony that Raines had run across the street and back. When Bradley denied saying this, counsel asked that Bradley's previous testimony be read back to the jury, but the trial court denied the request. Upon further questioning, Bradley acknowledged that his written statement to police the day after the shooting indicated that he heard the shots being fired but did not see the shooting.

Kareemah Greer testified that she was in a car with her sister and a friend near the Mapp's Lounge around 2:35 a.m. on the day of the incident when she saw Andre Raines and Dejuan White arguing and saw a man walking across the street with a gun. She turned the car around, heard three shots, and saw Raines grab his chest and start running. They later found Raines lying near the alley. Brandon Bradley ran over and they put Raines in the car and drove him to the hospital. Kareemah Greer was unable to identify the shooter. Karea Greer testified in a similar manner.

Police Officer Matthew Ryan testified that he arrested Petitioner on January 7, 2001 on a

traffic violation and was informed that Petitioner was wanted for a homicide. Defense counsel did not object to this testimony. Officer Ryan further testified that he had often seen Brooks and Parker together in the neighborhood.

Police Officer Kenneth Gardner testified about his unsuccessful efforts to locate and produce Dejuan White for trial. Ultimately, the parties agreed to waive the production of White as a witness. Officer Gardner then testified about his investigation of the shooing, the arrests of Parker and Petitioner, and the line-up in which Bradley identified Petitioner as the shooter. Officer Gardner testified that he had tried to arrest Petitioner for six months. Defense counsel did not object to this testimony.

Police Officer Lori Briggs, an evidence technician, testified about her investigation of the crime scene. Her testimony established that six shots from a .380 caliber weapon were fired in the area of Mapp's Lounge, but no weapon was recovered.

The parties stipulated to the admission of certain documents, including a State of Michigan certification of a prior conviction for James Brooks.

Petitioner did not testify at trial nor offer any witnesses. He challenged Brandon Bradley's credibility and argued that the prosecution failed to establish that he was the shooter beyond a reasonable doubt.

At the close of trial, the jury convicted Petitioner of second-degree murder, felony firearm, and felon in possession. The trial court subsequently sentenced him to 20 to 50 years imprisonment, two years imprisonment, and two to five years imprisonment on those convictions.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the same claims contained in the instant petition. The Michigan Court of

Appeals affirmed Petitioner's convictions and sentence. *People v. Brooks*, No, 237171, 2003 WL 22317164 (Mich. App. Oct. 9, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court asserting the same claims, which was denied. *People v. Brooks*, 470 Mich. 857, 680 N.W.2d 416 (2004).

Petitioner thereafter filed the instant habeas petition asserting the following claims:

I.  The trial court denied him the right of confrontation by limiting cross-examination of the "eye witness" and not allowing the court reporter to read back the testimony of the "eyewitness" which would have shown that the witness was inconsistent in his answers.

II. The errors made by counsel, when added together, amount to error requiring reversal.

III. His conviction for being a felon in possession of a firearm should be reversed as the record does not indicate evidence sufficient to prove guilt beyond a reasonable doubt.

Respondent has filed an amended answer to the petition contending that the claims should be denied for lack of merit.

## III.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV. Analysis

### A. Confrontation Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court limited defense counsel's cross-examination of eyewitness Brandon Bradley and did not allow the court reporter to read back a portion of Bradley's testimony.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314.

The right of cross-examination, however, is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998).

In this case, the Michigan Court of Appeals determined that the trial court did not violate Petitioner's confrontation rights because the court "appropriately noted that the subject matter raised by defense counsel had been addressed, and it was time to move to a different area." *Brooks*, 2003 WL 22317164 at *1. The Michigan Court of Appeals refused to consider the claim regarding the reading back of Bradley's trial testimony because Petitioner failed to cite authority in support of his argument. *Id.* at n. 1.

The Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. The record reveals that Petitioner's counsel (and co-defendant Parker's counsel) had sufficient opportunity to cross-examine Brandon Bradley and did so effectively. Counsel was able to challenge Bradley's observations about the incident, his ability to witness the shooting, and his prior statements. Counsel was more than able to identify and argue the inconsistencies in Bradley's testimony. The trial court's limitation on cumulative questioning was proper under Michigan law and did not violate Petitioner's confrontation rights. Habeas relief is not warranted on this claim.

Petitioner is also not entitled to habeas relief on his claim challenging the trial court's refusal to allow the court reporter to read back a portion of Bradley's testimony. It is well-established that the habeas relief is not available based upon perceived violations of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 52, 67-68 (1991). Moreover, Petitioner has not shown that the trial court's action violated his confrontation rights or otherwise rendered his trial

fundamentally unfair. Defense counsel was able to sufficiently challenge the inconsistencies in Bradley's testimony without the court reporter reading back a portion of that testimony.[2] Habeas relief is not warranted on this basis.

B. Ineffective Assistance of Counsel Claim

Petitioner next alleges that he is entitled to habeas relief because trial counsel was ineffective for failing to object to Police Officer Ryan's testimony that Petitioner was wanted for a homicide and to Police Officer Gardner's testimony that he tried to arrest Petitioner for at least six months.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at

---

[2] The Court further notes that the Michigan Court of Appeals refused to consider this claim based upon Petitioner's failure to properly brief the issue. The failure to properly brief an argument on appeal is a recognized and well-established independent and adequate state law ground for refusing to review trial court errors. *See Mudge v. Macomb Co*, 458 Mich. 87, 105 (1998); *Mitcham v. Detroit*, 355 Mich. 182, 203 (1959). This claim is thus also barred by procedural default, *Wainwright v. Sykes*, 433 U.S. 72, 85 (1977), as Petitioner has not established cause for noncompliance and actual prejudice from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

9

689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Applying the *Strickland* standard, the Michigan Court of Appeals rejected this claim, finding that Petitioner failed to rebut the presumption that defense counsel's conduct was sound trial strategy. *See Brooks*, 2003 WL 22317164 at *1. This decision is consistent with federal law and constitutes a reasonable application thereof. Petitioner has failed to show that defense counsel erred or that he was prejudiced by counsel's conduct. Trial counsel may have reasonably decided that the police testimony was appropriate and/or not worthy of an objection. Officer Ryan's testimony and Officer Gardner's testimony concerning the police investigation and the circumstances of Petitioner's arrest were properly admitted at trial. Such testimony was not unfairly prejudicial given Brandon Bradley's testimony identifying Petitioner as the shooter and the fact that Petitioner was brought to trial for the murder. Petitioner has not shown that the Michigan Court of Appeals' decision was unreasonable. Thus, habeas relief is not warranted on this claim.

C.   Insufficient Evidence Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his felon in possession of a firearm conviction. Specifically, Petitioner claims that the prosecution failed to show that he was the same James Brooks identified on the prior conviction documentation.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, the elements of felon in possession are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession, less than three or five years (depending on the underlying felony) had passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See* Mich. Comp. L. § 750.224f.

The Michigan Court of Appeals found this claim to be without merit because the parties stipulated to the submission of a document detailing Petitioner's prior conviction at trial. This Court agrees and finds that the state court's decision is neither contrary to *Jackson* nor an

11

unreasonable application of the law or the facts. Habeas relief is not warranted on this claim.

## V. Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. No certificate

of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED: DEC 1 - 2005